UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK C. DOUGLAS,<br><br>                      Petitioner,<br><br>v.<br><br>RICK HILL and ROB BONTA, Attorney General, State of California,<br><br>                      Respondents. | Case No.: 22-CV-00884 JLS (BGS)<br><br>**ORDER GRANTING MOTION FOR STAY AND ABEYANCE**<br><br>(ECF Nos. 1, 3) |

      Patrick C. Douglas ("Petitioner" or "Douglas") has filed a Petition for Writ of Habeas Corpus ("Pet.," ECF No. 1), as well as a Supplement thereto ("Pet. Supp.," ECF No. 4). Petitioner also filed a Motion for Stay and Abeyance ("Mot.," ECF No. 3), and Supplement thereto ("Mot. Supp.," ECF No. 5). Respondents Rick Hill and Rob Bonta (collectively, "Respondents") filed an Opposition to Petitioner's Motion ("Opp'n," ECF No. 9), and Petitioner filed a Reply to the Opposition ("Reply," ECF No. 11). Having considered the Petitioner's Petition and Motion, the parties' arguments and the law, the Court **GRANTS** Douglas's Motion for Stay.

/ / /

/ / /

# BACKGROUND

Following a jury trial, Douglas was convicted in San Diego Superior Court of two counts of attempted murder, two counts of assault with a deadly weapon, one count of assault with a deadly weapon on a peace officer, and one count of evading a peace officer with reckless driving. *See* Lodgment No. 1 (ECF No. 10-1) at 47–52. His conviction was affirmed by the California Court of Appeal, Fourth Appellate District, Division One on October 30, 2020, *id.* at 62–75, and a Petition for Review he filed in the California Supreme Court was denied on January 13, 2021, *id.* at 77.

Douglas constructively filed a Petition for Writ of Habeas Corpus and Motion for Stay and Abeyance in this Court on June 11, 2022.[1] *See generally* Pet; Mot. The one-year statute of limitations imposed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") expired two days later on June 13, 2022.[2] The Petition raises two exhausted claims, an insufficiency of the evidence claim, an improper jury instruction claim, and an unexhausted ineffective assistance of trial counsel claim in which Douglas claims trial counsel should have investigated and presented a diminished capacity defense. *See* Pet.; *see also* Pet. Supp.; Mot.; Mot. Supp. On June 14, 2022, Douglas constructively filed a habeas corpus petition in the San Diego Superior Court raising the unexhausted ineffective assistance of counsel claim. ECF No. 10-1.

///
///
///

---

[1] A document filed by a prisoner is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of court. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) (applying *Houston* to a pro se prisoner's federal habeas petition and state court habeas petition).

[2] The statute of limitations expired on June 12, 2022, which was a Sunday. *See* https://www.timeanddate.com/date/dateadd.html?d1=12&m1=6&y1=2022&. Under Fed. R. Civ. Pro. 6(a)(1)(C), if the last day of the period of limitation is a Saturday or Sunday, "the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday." Fed. R. Civ. Pro. 6(a)(1)(C).

In his motion, Douglas seeks a stay pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005), in order to exhaust his ineffective assistance of counsel claim in state court. *See* Mot.; Mot. Supp. In opposition to the Motion, Respondents argue Douglas has not shown good cause for his failure to exhaust. *See* Opp'n; *see also* ECF No. 10-1.

## DISCUSSION

In order to have their claims heard, habeas petitioners who wish to challenge their state court conviction in federal court must demonstrate they have exhausted their state court remedies and file their claims within the one-year statute of limitations. 28 U.SC. §§ 2244(d), 2254(b)(1)(A); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). A petitioner satisfies the exhaustion requirement by presenting a claim to a state's highest court, either on direct appeal or through state collateral proceedings. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Once claims are exhausted, a petitioner must bring those claims in a federal habeas corpus petition within a one-year statute of limitation. 28 U.S.C. § 2244(d).

When a petitioner files a habeas corpus petition in federal court which contains both exhausted and unexhausted claims, or only unexhausted claims, a district court has the discretion to stay the petition while a petitioner returns to state court to exhaust the unexhausted claims. *Rhines*, 544 U.S. at 275–76. Once a petitioner has exhausted the claims, a district court lifts the stay and a petitioner may then proceed in federal court with all his claims. *Id.* In order for a petitioner to be granted a *Rhines* stay, however, he or she must establish: (1) good cause for the failure to exhaust, (2) the unexhausted claims are potentially meritorious, and (3) he or she has not engaged in intentionally dilatory tactics. *Id.* at 277–78.

**I. Whether Douglas Has Established Good Cause**

"The good cause element is the equitable component of the *Rhines* test . . . [and] [a]s such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify th[e] failure [to exhaust]." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). Since *Blake*, "[t]he caselaw concerning what constitutes

'good cause' under *Rhines* has not been developed in great detail." *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017) (citing *Blake*, 745 F.3d at 980). In the Ninth Circuit, however, a petitioner's lack of counsel in state post-conviction proceedings is sufficient to establish good cause under *Rhines*. *Id.* at 721. Some district courts interpreted *Dixon* as requiring, in addition to a lack of counsel, a showing that the petitioner had commenced state court exhaustion proceedings before coming to federal court. *See Torres v. McDowell*, 292 F. Supp. 3d 983, 990 (C.D. Cal. Nov. 13, 2017); *Sangurima v. Montgomery*, No. 2:17-cv-05022-PSG-KES, 2017 WL 7371168, *7 (C.D. Cal. Dec. 12, 2017); *Reeves v. Madden*, No. 3:19-cv-01886-WQH-RBB, 202 WL 65076, at *4 (S.D. Cal. Jan 7, 2020). In *Cage v. Montgomery*, 812 Fed. App'x 679 (9th Cir. 2020),[3] however, the Ninth Circuit clarified that the distinction between petitioners who file state post-conviction review petitions prior to filing their motion for stay in federal court and those who do not is "immaterial" for purposes of determining whether a *Rhines* stay is warranted. *Cage*, 812 Fed. App'x at 680.

In support of his Motion for Stay, Douglas states that his former appellate attorney, Mary Wells, told him in March 2022 that she would assist him by preparing a basic state court petition for writ of habeas corpus, "Stay and Abey" request, and federal petition for writ of habeas corpus for him to file. Pet. at 5–6, 17; Pet. Supp. at 10, 12–13. According to Douglas, Wells told him the Covid-19 pandemic had delayed her preparation of the documents and he should "be patient as [she] prepares [his] state habeas petition." Pet. at 9, 12. He alleges that due to his mental illness, his incarceration, and the Covid-19 protocols implemented in prison, which restricted his law library access, he relied on Wells's assurances. *Id.* When he still had not received those documents as of June 10, 2022, three days before his statute of limitations was to run out, he filed the Petition and

---

[3] Pursuant to Ninth Circuit Rule 36-3(c), "[u]npublished decisions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

Motion for Stay in this case. Pet. at 5–6, 17; Pet. Supp. at 10, 12–13. Douglas finally received the documents from Wells several days later. He filed the state petition for writ of habeas corpus in San Diego Superior Court on June 14, 2022, *see* ECF No. 10-1, and sent the federal habeas corpus petition and the Motion for Stay prepared by Wells to the Court; those documents were filed as supplements to his Petition and Motion for Stay on June 21, 2022. *See* Pet. Supp.; Mot. Supp.

In his Reply to Respondents' Opposition, Douglas states he "did not fully understand the legal issues presented nor the procedures for presenting my claims and could not have investigated and pursued the claim on my own." Reply at 3. In a declaration attached to the petition for writ of habeas corpus Douglas filed in the San Diego Superior Court on June 20, 2022, Wells states she has been assisting Douglas "on a pro bono basis and for the limited purpose of seeing this petition filed but inadvertently let time pass." ECF No. 10-1 at 97.

Douglas has "set forth a reasonable excuse, supported by sufficient evidence, to justify [his] failure [to exhaust]." *Blake*, 745 F.3d at 982. First, the failure was a direct result of Douglas's reliance on Wells's representations that she would assist him in exhausting his claims in a timely manner. Douglas states he did not exhaust his ineffective assistance of counsel claim earlier because he was following Wells's admonition to "be patient" while she prepared a state habeas petition and believed he would receive the documents before the statute of limitations expired. *See* Pet. at 9, 12, 17; *see also Vanderwood v. Huston*, No. 5:20-cv-02064-FLA-PD, 2021 WL 6103534, at *4–5 (C.D. Cal. Oct. 20, 2021) (finding good cause under *Rhines* where petitioner relied on counsel's representation that the unexhausted claims would be exhausted before the statute of limitations ran out). Moreover, Douglas's mental health issues and incarceration substantially interfered with his ability to understand and investigate his ineffective assistance of counsel claim. Douglas's original counsel, deputy public defender Tatiana Kline, arranged for Douglas to be evaluated by Dr. David DeFrancesco after determining a mental defense should be investigated. ECF No. 10-1 at 79–80. But a report was never

generated, and therefore remained inaccessible to Douglas, because Douglas's retained attorney, Justin Murphy, did not follow up with DeFrancesco despite being told of the evaluation by Kline. *Id.* at 79–80, 89–90.  Further, Murphy refused to cooperate by providing a declaration until May 2022 after Wells told him Douglas was filing a federal habeas corpus petition. *Id.* at 108; *see, e.g.*, *Spicer v. Madden*, No. 2:17-cv-07353-PA (AFM), 2022 WL 2229936, at *12 (C.D. Cal. Feb. 2, 2022) (finding good cause under *Rhines* where "pro se, indigent, incarcerated inmate with cognitive deficits . . . could not have known about all of his viable ineffective assistance of counsel claims at the time he filed his state court petitions" and the claims were "based upon evidence outside that record that would be difficult, if not impossible, for Petitioner to obtain without the assistance of counsel").

Respondents argue *Dixon* does not apply to Douglas's case because he "received help from his state appellate counsel in investigating and preparing the petition he filed in the state superior court" and was therefore not proceeding pro se. Opp'n at 4.  It is clear from Douglas's filings in this case that Wells has assisted Douglas in preparing and filing his state and federal petitions.  Receiving help from an attorney on a pro bono basis, however, is not the same as being represented by an attorney.  A retained attorney has a professional and legal obligation to adequately represent a petitioner in post-conviction proceedings. *See*, *e.g.*, *Blake*, 745 F.3d at 983 (finding that "ineffective assistance of postconviction counsel [can] constitute good cause for a *Rhines* stay").  But an attorney who is merely assisting a petitioner out of the goodness of her heart does not.  All of the petitions filed in state and federal court identify Douglas as proceeding pro se. *See* Pet. at 15; Mot.; Pet. Supp. at 9; Mot. Supp.; ECF No. 10-1 at 1.  While Wells told Douglas she would help him draft and obtain declarations and exhibits in support of his state habeas petition, she does not represent him in those proceedings. *See* ECF No. 10-1 at 97.

Even if the Court concluded Wells was representing Douglas in his postconviction proceedings, Douglas would still have met the "good cause" standard of *Rhines*.  In *Blake*, the Ninth Circuit held that "the ineffectiveness of postconviction counsel could constitute

good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause 'was not a bare allegation of state postconviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence.'" *Dixon*, 847 F.3d at 721 (quoting *Blake*, 745 F.3d at 983). Here, Douglas has presented more than a "bare allegation" of ineffectiveness of postconviction counsel. *Dixon*, 847 F.3d at 721; *Blake*, 745 F.3d at 983. Wells admitted she told Douglas she would prepare his state habeas petition in a timely manner. ECF No. 10-1 at 97. Douglas stated in his Petition he had not exhausted his claim because he was following Wells's admonition to "be patient" while she prepared a state habeas petition to exhaust his ineffective assistance of trial counsel claim. *See* Pet. at 9, 12; *Vanderwood*, 2021 WL 6103534, at *4–5. Wells states in her declaration that Murphy refused to respond to her questions and request for a declaration until May 26, 2022, when he sent her an email saying he believed Douglas was competent and did not think a diminished capacity defense was viable. ECF No 10-1 at 108. At that point, she could have filed a state habeas corpus petition on Douglas's behalf using the same evidence as was presented in the state habeas petition filed on June 14, 2022: Murphy's email, DeFrancesco's psychological evaluation, and the declarations from Douglas, Kline, and DeFrancesco. *See generally* ECF No. 10-1. Instead, she "inadvertently . . . let time pass," which resulted in Douglas's ineffective assistance of trial counsel claim being unexhausted when his federal habeas corpus petition was due. ECF No. 10-1 at 97. This is sufficient to show postconviction counsel's representation fell below an objective standard of reasonableness and that Douglas was prejudiced by counsel's errors. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Douglas has presented a "concrete and reasonable excuse, supported by evidence," that post-conviction counsel was ineffective, and he has therefore shown good cause under *Rhines*. *Dixon*, 847 F.3d at 721.

## II. Whether the Claims are Potentially Meritorious

"A federal habeas petitioner must establish that at least one of his unexhausted claims is not 'plainly meritless' in order to obtain a stay under *Rhines*." *Dixon*, 847 F.3d at 722 (citation omitted). "In determining whether a claim is 'plainly meritless,' principles

of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Id.* (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005)).

Although one of the victims and a witness did not identify Douglas as the perpetrator, evidence that Douglas was the attacker was strong. The first victim identified her attacker as "Patrick" who was driving a four-door Mercedes. ECF No. 10-1 at 65. "Patrick" told her it was his birthday and showed her his driver's license which showed a birthdate of November 7, the date of the attack. *Id.* at 63–64. Shortly after the first stabbing, a second stabbing was reported at a nearby 7-Eleven. *Id*. An officer responding to that incident saw a light-colored Mercedes driving away from where the second victim was stabbed. *Id*. at 66. Douglas was eventually apprehended, and his blood was found on the trunk and the steering wheel of the car. *Id*. at 67. Blood from the first victim was found on the passenger side of the car, as well as Douglas's phone and driver's license. *Id*. Douglas had also recorded a video of himself on his phone dated shortly after the first attack showing him inside the car with a knife threatening to kill people. *Id*. The second stabbing victim identified Douglas as the perpetrator. *Id.* at 20. Nevertheless, Murphy presented a mistaken identity defense at trial. *Id.* at 20–21.

When Douglas's first attorney Tatiana Kline interviewed him, Douglas told her about his mental health issues. *Id.* at 79. This was later corroborated by Marsha Jackson, an individual who had a power of attorney for Douglas, who told Kline that Douglas had been "diagnosed [with] bipolar [disorder], was manic, experienced irresistible impulses, and was not taking a prescribed mood stabilizer." *Id.* Kline had Douglas evaluated by a psychologist, DeFrancesco. *Id.* When Murphy, took over the case, Kline told Murphy about the mental issues she saw with the case and about DeFrancesco's evaluation; Murphy never followed up.[4] In addition Douglas claims Murphy told him "[his] history of mental

---

[4] Kline states in her declaration that Murphy took over the case "before Dr. DeFrancesco had the opportunity to meet with Mr. Douglas, conduct testing, and review the medical records and reports

disorders was not relevant to the case and that he couldn't use [his] mental health history at all." *Id.* at 92.  He also told Douglas he had merely "skimmed" his mental health records. *Id.* at 93.  Further, Murphy told Wells in an email that he found Douglas to be "mentally competent," and that "[i]n good faith, I did not believe that a diminished capacity defense was appropriate." *Id.* at 108.  DeFrancesco ultimately diagnosed Douglas with Bipolar II Disorder, Post Traumatic Stress Disorder ("PTSD"), and Intermittent Explosive Disorder. Douglas told DeFrancesco he did not remember committing the acts that led to his arrest and prosecution.  *See* ECF No. 10-1 at 83, 85–86.

Douglas's ineffective assistance of trial counsel claim is not "plainly meritless." *Dixon*, 847 F.3d at 722.  Murphy did not investigate a mental health defense despite the fact that both Douglas's prior attorney and Douglas himself alerted him to it.  Further, Murphy does not appear to understand the difference between the defenses of diminished *capacity* and diminished *actuality*.  The defense of diminished capacity has been abolished in California.  *See People v. Steele*, 27 Cal.4th 1230, 1254 (2002).  On the other hand, a "[t]o support a defense of 'diminished actuality,' a defendant [must] present[] evidence of voluntary intoxication or mental condition to show he 'actually' lacked the mental states required for the crime." *People v. Clark*, 52 Cal. 4th 856, 880, n.3 (2011) (citing *People v. Steele*, 27 Cal. 4th 1230, 1253 (2002)).  Given that the victims were random and not known to Douglas, and that Douglas had an extensive and well-documented history of mental health issues, Murphy should have investigated and presented a diminished capacity defense, which could have persuaded the jury that he did not have the requisite intent for the attempted murder convictions.

/ / /

---

necessary to generate a formal report." ECF No. 10-1 at 80, 89.  DeFrancesco states in his declaration and report, however, that he conducted a psychological interview with Douglas on November 13, 2017, and that Kline had provided him with Douglas's medical and psychiatric records.  *Id.*  He also states in his declaration that he prepared a report, at Wells's request, "based on [his] examination from November 13, 2017, and the records I reviewed . . . ." *Id.* at 89.  It seems clear that DeFrancesco's and not Kline's recollection is correct.

**III. Whether Douglas Has Engaged in Intentionally Dilatory Tactics**

Wells mailed the state habeas petition raising his ineffective assistance of counsel claim to Douglas on June 8, 2022. Pet. Supp. at 13. Douglas constructively filed the petition in the San Diego Superior Court five days later on June 14, 2022. *See* ECF No. 10-1. The California Court of Appeal website indicates Douglas filed a petition for writ of habeas corpus in the California Court of Appeal for the Fourth Appellate District, Division One, on September 22, 2022. *See* https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=2403682&doc_no=D080954&request_token=NiIwLSEmPkg%2FWzBRSCMtWE1IMEQ6UkxbKyJeIz9SMCAgCg%3D%3D (last visited 10/7/22). Respondents do not argue that Douglas has engaged in intentionally dilatory tactics, and the Court finds no basis in the record upon which to conclude otherwise. Accordingly, the third requirement for granting a *Rhines* stay has been met. *Rhines*, 544 U.S. at 277–78.

## CONCLUSION

Based on the foregoing, the Court concludes that Douglas has met the criteria for a stay pursuant to *Rhines*. Accordingly, his Motion for Stay is **GRANTED** and the action is stayed. Douglas is **DIRECTED** to file a status report every ninety (90) days, beginning with the date of this Order, that details his progress toward exhaustion. He is also **DIRECTED** to file, within thirty (30) days of the California Supreme Court's resolution of his ineffective assistance of counsel claim, a motion requesting that the stay be lifted and that leave to file a First Amended Petition pursuant to 28 U.S.C. § 2254 containing all his exhausted claims be granted. The Clerk of Court will administratively close this case until further Order of this Court.

**IT IS SO ORDERED.**

Dated: October 13, 2022

Hon. Janis L. Sammartino
United States District Judge