1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK C. DOUGLAS,<br><br>                              Petitioner,<br><br>v.<br><br>RICK HILL, Warden, et al.,<br><br>                              Respondents. | Case No.:  22-CV-884-JLS (BGS)<br><br>**ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND ISSUING A CERTIFICATE OF APPEALABILITY** |

        Presently before the Court is a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by Patrick C. Douglas, a state prisoner proceeding *pro se* and *in forma pauperis*.  ECF No. 17.  Respondent has filed an Answer and lodged the state court record.  ECF Nos. 19, 20.  Petitioner has filed a Traverse.[1]  ECF No. 26.

I.    **Background**

        A jury found Petitioner guilty of two counts of attempted premeditated murder with the use of a deadly weapon and infliction of great bodily injury, two counts of assault with the use of a deadly weapon and infliction of great bodily injury, one count of assault with a deadly weapon on a peace officer, and one count of evading an officer with reckless

---

[1]  Although this case was referred to United States Magistrate Judge Bernard G. Skomal pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter.  *See* S.D. Cal. CivLR 7.1(d); *id.* 72.1(d).

driving.  Lodgment No. 1, ECF No. 20-1 at 205–10.  At a separate bench trial, Petitioner was found to have suffered two serious prior felony convictions and three prior strike convictions.  *Id.* at 211–13.  He was sentenced to 30 years and four months in prison, plus 25 years to life, plus life with the possibility of parole after 14 years.  *Id.* at 216–20.

Petitioner appealed, raising claims one and two presented here, alleging instructional error and insufficient evidence with respect to the conviction for assault on a peace officer. Lodgment No. 13, ECF No. 20-13.  The appellate court affirmed.  Lodgment No. 16, ECF No. 20-16.  A petition for review to the California Supreme Court raising those two claims was summarily denied.  Lodgment Nos. 17, 18, ECF Nos. 20-17, 20-18.

After the original federal Petition was filed, the Court granted Petitioner's Motion for Stay and Abeyance to exhaust state court remedies as to his third and final claim, ineffective assistance of trial counsel in failing to develop and present a mental health defense.  ECF No. 12.  After exhaustion, Petitioner filed the First Amended Petition containing all three claims.  ECF No. 17.  Respondent answers that federal habeas relief is unavailable because the state court adjudication of all three claims is objectively reasonable.  ECF No. 19.

## II.   Trial Proceedings

The following statement of facts is taken from the appellate court opinion on direct appeal.  The Court defers to state court findings of fact and presumes they are correct. *Sumner v. Mata*, 449 U.S. 539, 545–47 (1981).

> During the early morning of November 7, 2017, Shantey P. was on a bench outside a church on El Cajon Boulevard and 54th Street in San Diego when Douglas pulled up in a Mercedes Benz and offered her a ride.  Shantey got into Douglas's car and agreed to go to a "room" with him.  Although he began by driving normally, Douglas started to drive erratically when he began traveling on the 94 freeway.  Shantey asked Douglas to pull the car over several times, but he refused.  Despite not having a gun, she told him that she was going to shoot him if he did not let her out of the car.

/ / /

/ / /

At 2:48 a.m., Douglas pulled into a parking lot, got out of his car, and walked toward an ATM. He then walked to the trunk of his car and said words to the effect, "I am going to kill this bitch." He also asked Shantey something like, "Why are you treating me like this? It is my birthday."

Douglas came around to the passenger side of the car and began hitting and stabbing Shantey several times. Surveillance video from a nearby business showed Douglas making 12 to 17 punching and lunging motions into the front passenger side window.

David F., who was walking in the area at the time, watched as Douglas opened the passenger's side door, threw a purse out of the car, yelled at Shantey to get "the F" out of the car, called her a "bitch," and started "whaling" on her. David ran toward the car screaming, "Hey, what are you doing?" Douglas ran to the driver's side of his vehicle, got in, drove over Shantey's purse, and headed in the direction of the 7-Eleven on Avocado Boulevard. [Footnote: At trial, David testified that Douglas was not the person he saw attacking Shantey. Nevertheless, the prosecutor impeached David on the stand by offering evidence that he was on methamphetamine on the subject morning and was in custody at the time of trial. The prosecution offered evidence implying that David did not want to appear to be a snitch while incarcerated. However, David testified that he was not afraid of identifying someone for fear of being labeled a snitch.]

Shantey, who had managed to get out of the car, started stumbling away. After David picked up her belongings, he noticed she had been stabbed. David grabbed a charging wire from her purse and wrapped it around her leg to stop the bleeding. He then summoned help.

Shortly after 2:57 a.m., an El Cajon police officer arrived at the scene, where he found Shantey lying in the fetal position with a large amount of blood on her. She said that the person who stabbed her was named Patrick, and he was driving a four-door Mercedes. Shantey was taken to the hospital where she was treated for multiple stab wounds as well as fractures to the bones in her face.

While at the scene, the officer heard a report on the radio of a stabbing at the 7-Eleven on Avocado Boulevard, about 3.7 miles away. The description of the vehicle in that broadcast was similar to the description of the vehicle fleeing the scene in Shantey's case.

Around 3:00 a.m., Frito-Lays delivery driver Dina H. was walking out of the 7-Eleven on Avocado Boulevard after making a delivery when Douglas approached and started attacking her.  When a San Diego sheriff's deputy responded to the scene, she found Dina on the ground covered in blood.  Dina had labored breathing, was turning blue, and was not responding to the deputy's questions.  The deputy called the paramedics.  Dina was transported to the hospital, where she was treated for a stab wounds.

The surveillance video from the 7-Eleven showed a sedan driving into the parking lot at 3:03 a.m.  It made an abrupt stop and then the front driver's side door opened up.  Someone in dark pants and a light-colored long sleeve shirt walked and then ran across the parking lot toward Dina's Frito-Lays truck.  The actual attack occurred outside the range of the cameras.  Dina ran to the front door of the 7-Eleven and said something to the store clerk, which was later determined to be, "I got stabbed."  The person in the parking lot walked toward where the sedan was parked and drove away.

As San Diego County Sheriff's Deputy Nic Gowanlock was driving toward the 7-Eleven on Avocado Boulevard in response to a call reporting the stabbing, he observed a light-colored Mercedes driving in the opposite direction on Avocado Boulevard. With his lights and siren activated, Gowanlock made a U-turn, got behind the Mercedes, and broadcast his location over the radio.

Instead of pulling over, Douglas continued driving slowly and then turned west onto Don Pico Road.  Gowanlock got on his loud speaker and ordered Douglas to stop his vehicle.  Douglas ignored the command and turned left onto Don Pico Court.  Once Douglas got to the end of the cul-de-sac, he drove into a driveway, backed out, and began driving back toward Gowanlock and the four or five other patrol vehicles that had joined the pursuit.

San Diego County Sheriff's Deputy Nicholas Hvizdzak, who was in one of those patrol vehicles, activated his overhead camera, holstered his gun, and got out of his car.  [Footnote: a portion of the recording from Hvizdzak's camera was played for the jury.]  He then stood in Douglas's pathway, pointed his gun at the Mercedes, and ordered Douglas to get out of the car.  Douglas kept driving toward Hvizdzak at about five or ten miles per hour and got within a foot of the deputy's shins.

/ / /

4

Hvizdzak moved out of the way of Douglas's car to avoid being hit. However, Hvizdzak kicked under the passenger's side headlight of Douglas's car as it drove by.  Hvizdzak believed that it was Douglas's intent to run him over and had he not moved, he would have been hit by Douglas's car.

Douglas then led deputies on a high-speed pursuit, reaching speeds over 100 mph.  He committed several traffic violations during the chase. Eventually, deputies lost sight of Douglas near Steele Canyon and the 94 freeway.  Later, they spotted his abandoned Mercedes stopped in the middle of a lane on the 94 freeway.

Douglas's bloody fingerprints were found on the rear of the Mercedes, just below the license plate holder.  His blood was also found on the steering wheel.  Shantey's blood was found on the passenger's side of the vehicle. Douglas's iPhone and driver's license were also found inside the Mercedes. His license showed that the date of the attack was his birthday, as he told Shantey.

With the help of the Border Patrol using an infrared scope and a helicopter, Douglas was located hiding under a tree.  There was blood on Douglas's sleeve when he was taken into custody.  Douglas identified himself as Patrick.  He had a cut on his hand.

Douglas recorded a video on his phone at 3:04 a.m., about 10 minutes after he stabbed Shantey and two to three minutes before he stabbed Dina. The video showed Douglas holding a knife while driving the Mercedes.  It also showed blood inside the vehicle on the passenger's seat and floorboard. In the video, Douglas stated, "I'm about to go on killing spree.  I'm going to kill everyone I can kill.  You'll never see me again."

Several threatening text messages showing Douglas's anger at an unrelated individual also were sent from his cell phone between 10:51 p.m. and 11:12 p.m. the night before the stabbings.

Lodgment No. 16, *People v. Douglas*, D076038, slip op. at 2–6 (Cal.Ct.App. Oct. 30, 2020), ECF No. 20-16.

## III.   Petitioner's Claims

(1)  Petitioner's Fourteenth Amendment right to due process was violated because insufficient evidence was produced at trial that he used his car in a manner likely to produce

5

death or great bodily injury as necessary to support the conviction for assault with a deadly weapon against a peace officer.  ECF No. 17 at 6.

(2)  Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when the jury was erroneously instructed that a vehicle could be an inherently deadly weapon. *Id*. at 7.

(3)  Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel and due process were denied by trial counsel's failure to investigate and present a mental health defense based on Petitioner's history of trauma and diagnoses of bipolar disorder, PTSD, and intermittent explosive disorder.  *Id*. at 8.

**IV.   Discussion**

   **A.   Standard of Review**

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, as all claims presented here were, a federal habeas petitioner must first demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision may be "contrary to" clearly established law (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent."  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Id*. at 407.  Clearly

established law "refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Id.* at 412.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1), (d)(2)). Even if Petitioner can satisfy § 2254(d), a showing of a constitutional violation is still necessary for habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (holding that section 2254(d) "sets forth a precondition to the grant of habeas relief . . ., not an entitlement to it"). Even then, federal habeas relief is ordinarily not available if the federal constitutional error is harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that a state prisoner seeking federal habeas relief must show a trial error had "a substantial and injurious effect or influence in determining the jury's verdict"").

## B.    Claim One

Regarding his conviction for assault with a deadly weapon on a peace officer, Petitioner claims there is insufficient evidence that he used his car in a manner likely to produce death or great bodily injury, as the evidence showed he attempted to evade the officers and tried to drive around Officer Hvizdzak with slow maneuvers and without acceleration, collisions or injuries. ECF No. 17 at 6. Respondent answers that the state court reasonably determined the evidence showed Petitioner's car would have hit Officer Hvizdzak had he not moved out of its way, and that a rational jury could infer the car would have hit Hvizdzak causing great bodily injury had he not moved, particularly in light of the lack of any evidence showing that Petitioner tried to stop. ECF No. 19-1 at 16–18.

Claim one was presented to the state supreme court in a petition for review of the appellate court opinion. Lodgment No. 17, ECF No. 20-17. It was denied in an order which stated: "The petition for review is denied." Lodgment No. 18, ECF No. 20-18 at 1. Claim one was also presented to the state appellate court on direct appeal and denied in a

reasoned opinion.  Lodgment No. 13, ECF No. 20-13; Lodgment No. 16, ECF No. 20-16. This Court applies a presumption that the silent denial by the state supreme court adopted the reasoning of the appellate court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *see also Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) (federal habeas courts look to the last reasoned decision of a state court which adjudicated a federal claim on the merits). The appellate court stated:

### A. Douglas's Contentions

Douglas contends substantial evidence does not support his conviction for assault with a deadly weapon against a peace officer (count 5). Specifically, he argues there was insufficient evidence that he used his car in a manner likely to produce death or great bodily injury.

### B. Standard of Review

We review a sufficiency of the evidence claim under the familiar and deferential substantial evidence standard of review.  (See *People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)  Substantial evidence is evidence that is "reasonable, credible, and of solid value."  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  In reviewing for substantial evidence, we presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (See *People v. Lee* (2011) 51 Cal.4th 620, 632.)  "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (Citation.) We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

"When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury.  It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion." (*People v. Brown* (1984) 150 Cal.App.3d 968, 970.)  Whether the evidence presented at

8

trial is direct or circumstantial, the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  (See *People v. Manibusan* (2013) 58 Cal.4th 40, 92; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)   Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.  (See *People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1356.)

## C. Analysis

"An assault is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another."  (§ 240.)   Section 245, subdivision (c) makes it a crime to commit an assault with a deadly weapon on a police officer.  The elements of assault with a deadly weapon, as applied to Douglas's use of his car here, are as follows: "1. The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (¶) 2. The defendant did that act willfully; (¶) 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; (¶) 4. When the defendant acted, he had the present ability to apply force with a deadly weapon to a person; (¶) 5. When the defendant acted, the person assaulted was lawfully performing his duties as a peace officer; (¶) and (¶) 6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his duties."  (CALCRIM No. 860; see §§ 240, 245, subd. (c).)

Assault is a general intent crime.  (*People v. Williams* (2001) 26 Cal.4th 779, 788.)  An "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."  (*Id.* at p. 790.)

Cars can be used as deadly weapons.  (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 458 (*Bipialaka*); *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 10.)  The question for the jury below was whether the way Douglas used his car was likely to cause or produce death or great bodily injury.  (*Bipialaka*, at p. 459.)

///

Here, Douglas contends substantial evidence does not support his conviction for assault with deadly weapon (a car) because there was no collision, no injuries, and his focus was on evading apprehension, not striking Hvizdzak.  He also claims he "slowly maneuvered . . . past . . . (a) patrol vehicle . . . didn't rev his engine, suddenly grip the wheel or accelerate toward (Hvizdzak)."  In support of his position, Douglas relies on several cases wherein he notes the "strong fact patterns" as compared to the relatively weak evidence he claims exists in the instant action. (See, e.g., *Bipialaka*, *supra*, 34 Cal.App.5th at p. 458 (car driven at another car in an intersection); *People v. Golde* (2008) 163 Cal.App.4th 101, 116-117 (defendant accelerated vehicle toward victim as she tried to run away); *People v. Finney* (1980) 110 Cal.App.3d 705, 716 (defendant rammed several well-marked patrol cars while avoiding civilian vehicles during high speed car chase); *People v. Claborn* (1964) 224 Cal.App.2d 38, 41 (defendant altered course and aimed vehicle at police officer, colliding head-on with him).) Although we acknowledge that the facts in these cases might be more severe than what was presented to the jury in the instant matter, we find a comparison between the facts of this case to the facts of those other cases not particularly helpful in a substantial evidence review.  (See *People v. Thomas* (1992) 2 Cal.4th 489, 516 ("When we decide issues of sufficiency of the evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts.").) Accordingly, the cases cited by Douglas provide fact patterns supporting a conviction for assault with a deadly weapon (a car), but they do not provide us with the only fact patterns on which we could find substantial evidence to exist here.

In the instant matter, the evidence adduced at trial supports the jury's finding that Douglas willfully committed an act that, by its nature, would probably and directly result in great bodily injury to Hvizdzak.  Douglas drove his car toward Hvizdzak and there is no evidence that he intended to stop.  As Hvizdzak testified at trial, with Douglas driving toward him, he had two choices: shoot or move.  He moved.  He further stated that had he not moved, he would have been hit by Douglas's car.  Indeed, he was so close to Douglas's car, he was able to kick under the passenger's side headlight. Additionally, the fact that Douglas was only traveling five to 10 miles per hour does not undermine the jury's verdict.  The evidence at trial showed that, had Hvizdzak not moved out of the way, the car would have hit him.  There was no evidence that Douglas intended to stop his car or tried to stop his car, and the jury could reasonably infer that the car would have run over Hvizdzak, causing great bodily injury.

///

10

1
2
3
4

> In short, witness testimony along with the video footage of the subject incident is sufficient to support the conviction here.  Based on the record, we are satisfied that ""'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation.)'" (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)

5

Lodgment No. 16, *People v. Douglas*, D076038, slip op. at 6–11, ECF No. 20-16.

6
7
8
9
10
11
12
13
14
15
16

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The Fourteenth Amendment's Due Process Clause guarantees that "an applicant is entitled to federal habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 319, 324 (1979).  A federal habeas court is required to apply the *Jackson* standard with an additional layer of deference when reviewing a state court decision under 28 U.S.C. § 2254(d)(1), and "must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)).

17
18
19
20
21
22
23
24
25
26
27
28

As noted, the state appellate court found that the offense of assault with a deadly weapon on a peace officer required the prosecution to prove beyond a reasonable doubt that Petitioner willfully committed an act that by its nature would probably and directly result in great bodily injury to Officer Hvizdzak.  This Court is bound by that interpretation of state law.  *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) ("'[S]tate courts are the ultimate expositors of state law,' and [federal habeas courts] are bound by the state's construction except where it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue." (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975))); *see also Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018) (noting that federal habeas courts first look to state law for the elements of the offense "and then turn to the federal question of whether the (state) court was objectively reasonable in concluding that sufficient evidence supported" the conviction).

The state court found there was sufficient evidence in the record to establish that Petitioner willfully committed an act that by its nature would have probably and directly resulted in great bodily injury to Officer Hvizdzak because eyewitness testimony and video footage showed: (1) Petitioner drove his car toward Hvizdzak without any intention of stopping, (2) if Hvizdzak had not moved he would have been hit by the car, and (3) Hvizdzak was so close to the car as it passed he was able to kick under the headlight. Lodgment No. 16, *People v. Douglas*, D076038, slip op. at 10–11, ECF No. 20-16.

Petitioner points to evidence presented at trial which refutes that evidence, including Officer Hvizdzak's own police report and videotape showing Petitioner was focused on evading the police, did not aim his vehicle at Hvizdzak or accelerate toward him or rev the engine, and that Hvizdzak was safely behind his partner's vehicle when Petitioner passed him. ECF No. 26 at 9. Under *Jackson*, the jury is given broad discretion to decide "what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). Petitioner's argument that the jury could or should have drawn inferences from the trial evidence in favor of innocence rather than guilt does not support an insufficiency of the evidence claim. *See Wright v. West*, 505 U.S. 277, 296 (1992) ("In *Jackson*, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that '*all of the evidence* is to be considered in the light most favorable to the prosecution.'" (quoting *Jackson*, 443 U.S. at 319)). Petitioner has failed to show that no rational trier of fact could have found, based on the evidence he drove his car toward the officer with no intention of stopping, that he willfully committed an act that by its nature would probably and directly result in great bodily injury to Officer Hvizdzak, nor rebutted the presumption of correctness of the state court factual findings. *See Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011) (where the *Jackson* standard is "subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted."); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("It is not enough that a federal habeas court,

in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. . . . Rather, that application must be objectively unreasonable." (quotation marks and citations omitted)); *see also Miller-El*, 545 U.S. at 240 (in order to satisfy § 2254(d)(2), a petitioner must show the state court "conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" (quoting 28 U.S.C. § 2254(d)(2))).

In light of the extra layer of deference this Court gives to the application of the *Jackson* and *Winship* standards, it is clear that the state court adjudication of claim one is not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d)(1).  The state court did not apply a rule that contradicts the governing law set forth in *Jackson* or *Winship*, nor unreasonably apply that precedent to Petitioner's claim, nor unreasonably extend or refuse to extend legal principles to his case.  *See Williams*, 529 U.S. at 405–07; *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." (citation omitted)).   Neither did the state court adjudication involve an objectively unreasonable determination of the facts.  *Miller-El*, 537 U.S. at 340.

Habeas relief is denied with respect to claim one because the state court adjudication of the claim is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1)–(2).

## C.    Claim Two

Petitioner contends in claim two that his Fifth, Sixth and Fourteenth Amendment rights were violated when the jury was erroneously instructed that a vehicle is an inherently deadly weapon, because a vehicle does not qualify as an inherently deadly weapon under state law.  ECF No. 17 at 7.  Respondent answers that it was objectively reasonable within the meaning of § 2254(d) for the state court to find that although the jury was instructed on one invalid legal theory (that a vehicle is an inherently deadly weapon) and one valid legal

theory (that a vehicle could be an inherently deadly weapon by the way it is used), the instructional error was harmless beyond a reasonable doubt because the jury clearly convicted on the valid legal theory.  ECF No. 19-1 at 18–23.

The Court looks through the silent denial of this claim by the state supreme court to the appellate court opinion, which stated:

> The court instructed the jury with CALCRIM No. 875, which stated among other things: "A deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such away that it is capable of causing and likely to cause death or great bodily injury."  It also gave CALCRIM No. 860, which provided, in part: "A deadly weapon is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing or likely to cause great bodily injury."  The court also instructed the jury under CALCRIM No. 3145, which included a similar definition of deadly weapon.  Douglas contends the court erred by instructing that a weapon could be either inherently deadly or deadly in the way it is used because a car is not an "inherently deadly" weapon.  "We review defendant's claims of instructional error de novo." (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.)
>
> In *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*), the defendant used a box cutter by thrusting the blade at another man.  (*Id*. at p. 4.)  The court instructed the jury with CALCRIM No. 875, which defined a deadly weapon as one that is inherently deadly or used in such a way that it is capable of causing and likely to cause death or great bodily injury.  (*Aledamat*, at p. 4.)  Our Supreme Court held that "(b)ecause a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently dangerous weapons."  (*Id*. at p. 6.)  The Supreme Court accordingly held the jury instruction was erroneous but found the error was harmless beyond a reasonable doubt.  (*Id*. at pp. 7, 15.)
>
> Likewise, here, a car is not an inherently deadly weapon.  (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1054 (noting that a car is not inherently dangerous but can be found to be a deadly weapon).)  The court accordingly erred by referring to an inherently deadly weapon in the jury instructions.
>
> We next consider whether the instructional error was prejudicial.  The "usual 'beyond a reasonable doubt' standard of review established in *Chapman v. California* (1967) 386 U.S. 18, 24 . . . for federal constitutional error applies.  The reviewing court must reverse the conviction unless, after

examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Aledamat, supra*, 8 Cal.5th at p. 3; see *id*. at p. 13.)

Here, the record shows the instructional error was harmless beyond a reasonable doubt. At trial, no party argued that simply using a car was "inherently deadly." During closing argument, the prosecutor did not explain the phrase "inherently deadly." Nor did he argue that Douglas's car constituted a deadly weapon as a matter of law. Rather, the prosecutor stated that he was proceeding on a theory that Douglas used his car as a deadly weapon, that is he used it in a manner that could cause death or great bodily injury: "It is a moving vehicle being used as a battering ram to escape law enforcement capture, a deadly weapon. If Deputy Hvizdzak did not get out of the way and allow the defendant to run him over, would you consider that car a deadly weapon."

The prosecutor later focused the jury on the manner in which Douglas drove the car when interacting with Hvizdzak:

> "When you specifically use a car as a battering ram to get through a police blockade, sure you're using it as a deadly weapon. What would have happened to Deputy Hvizdzak if he didn't get out of the way? There's no indication that the defendant was going to stop. Deputy Hvizdzak had two options that day: get out of the way or shoot him. He chose to get out of the way for his own safety."

Moreover, in discussing the lesser included offense to count 5, the prosecutor again told the jury to focus on how Douglas was using his car:

> "So there's a lesser-included count to count 5, also. Simple assault on a peace officer. The way I like to think of this, basically if you don't think a moving car being used as a battering ram to avoid being caught is a deadly weapon or was being used as a deadly weapon in that case, then you move on to the lesser. Because that doesn't include the deadly weapon element. It's just a simple assault. So again, if you find him guilty of the assault with that deadly weapon, the car, count 5, you leave the lesser-included blank.

///

1
2
3
4
5
6
7
8
9
10
11
12

      Like the prosecutor, Douglas's trial counsel did not argue that the car was an inherently deadly weapon.  To this end, defense counsel focused on how Douglas was maneuvering the car ("he swerved"), claiming Douglas "moved (the car) out of the way."  However, counsel did not argue that Douglas's car could not be a deadly weapon.  Again, similar to the prosecutor, defense counsel emphasized how Douglas was driving his car.

      As in *Aledamat*, we conclude the jury necessarily found: "(1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat, supra*, 8 Cal.5th at p. 15.)  It is unlikely the jury would have found these above elements without considering how Douglas used his car.  The error accordingly was harmless beyond a reasonable doubt.

13    Lodgment No. 16, *People v. Douglas*, D076038, slip op. at 11–14, ECF No. 20-16.

14      Thus, the state appellate court found that to the extent a federal constitutional error

15    occurred it was harmless beyond a reasonable doubt under *Chapman v. California*, 386

16    U.S. 18, 24 (1967) (holding that a state trial error is harmless if it appears "beyond a

17    reasonable doubt that the error complained of did not contribute to the verdict obtained.").

18    The state court's application of the *Chapman* harmless error standard "qualifies as an

19    adjudication on the merits under AEDPA." *Brown v. Davenport*, 596 U.S. 118, 127 (2022).

20    In addition to demonstrating that the state court adjudication was objectively unreasonable

21    within the meaning of § 2254(d), Petitioner must also satisfy the *Brecht* federal harmless

22    error standard to be entitled to federal habeas relief.  *Id*. ("[S]atisfying *Brecht* is only a

23    necessary, not a sufficient, condition to relief.  AEDPA too must be satisfied." (citing

24    *Brecht*, 507 U.S. at 637 (holding that a state prisoner seeking federal habeas relief must

25    show a trial error had "a substantial and injurious effect or influence" on the outcome of

26    the trial))); *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (finding jury instruction on invalid

27    alternate legal theory to be trial error subject to *Brecht* harmless error analysis).

28    / / /

The state court found that erroneously instructing the jury that a deadly weapon is an object that is inherently deadly or one that is used in such a way as to be capable of and likely to cause great bodily injury was harmless because the jury was not asked to, nor did they need to, determine whether the car itself was an inherently deadly weapon, but clearly found, based on a correct instruction, that Petitioner used his car in an inherently deadly manner.  The evidence established that Petitioner drove his car toward the officer with no intention of stopping and that the officer would have been struck by the car had he not moved out of its path.  In light of the evidence that Petitioner operated his vehicle in such a way as to be capable of and likely to cause great bodily injury, that is, with no intention of stopping before hitting the officer who had to move out of its path, his contention that the manner in which he drove his vehicle, slowly and attempting to evade the officer, does not raise a reasonable doubt whether the jury found him guilty based on instructions that an object such as a car can be an inherently deadly weapon as well as a deadly weapon based on how it is driven.  The evidence and argument at trial encouraged and allowed the jury to find that Petitioner used his vehicle in such a way that the vehicle was capable of and likely to cause great bodily injury when he aimed it at the officer and proceeded with no intention of stopping, and no evidence or argument was presented to the jury suggesting they base their verdict on the inherently dangerous nature of a vehicle itself.  Therefore, the state court adjudication is an objectively reasonable application of the *Chapman* harmless error standard because the instructional error did not contribute to the verdict. *See Neder v. United States*, 527 U.S. 1, 15 (1999) ("[T]he test for determining whether a constitutional error is harmless [under *Chapman*] . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting *Chapman*, 386 U.S. at 24)).

The state court adjudication of claim two is objectively reasonable under § 2254(d)(1) because the state court did not apply a rule that contradicts the governing law set forth in *Chapman*, nor unreasonably apply that precedent to Petitioner's claim, nor unreasonably extend or refuse to extend it to his case. *See Williams*, 529 U.S. at 405–07;

1   *see also Richter*, 562 U.S. at 102 ("If this standard is difficult to meet, that is because it

2   was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete

3   bar on federal-court relitigation of claims already rejected in state proceedings.  It preserves

4   authority to issue the writ in cases where there is no possibility fairminded jurists could

5   disagree that the state court's decision conflicts with [the Supreme] Court's precedents."

6   (citation omitted)).   The state court adjudication also did not involve an objectively

7   unreasonable determination of the facts.  *Miller-El*, 537 U.S. at 340.

8          Even assuming, *arguendo*, that Petitioner can show the state court adjudication is

9   objectively unreasonable within the meaning of § 2254(d), he must also satisfy the *Brecht*

10  federal harmless error standard.  *Davenport*, 596 U.S. at 127.  To do so, he must show that

11  the instructional error had "a substantial and injurious effect or influence" on the outcome

12  of the trial.  *Brecht*, 507 U.S. at 637.  As noted above, the evidence and argument at trial

13  encouraged and allowed the jury to find that Petitioner obviously used his vehicle as a

14  deadly and dangerous weapon when he aimed it at the officer and proceeded with no

15  intention of stopping, and no evidence or argument was presented to the jury suggesting

16  they should base their verdict on the inherently dangerous nature of a vehicle itself.  It is

17  therefore clear that the instructional error did not have a substantial or injurious effect or

18  influence on the verdict.  *Id.*; *see also United States v. Garrido*, 713 F.3d 985, 996–98 (9th

19  Cir. 2013) (considering closing arguments and jury instructions when evaluating

20  harmlessness of instruction on invalid alternate legal theory).

21         Habeas relief is denied with respect to claim two because the adjudication of the

22  claim by the state court is objectively reasonable within the meaning of 28 U.S.C.

23  § 2254(d)(1)–(2), and because even assuming that standard can be met, any federal

24  constitutional error is harmless under *Brecht*.

25         **D.   Claim Three**

26         Finally, Petitioner alleges in claim three that his Sixth and Fourteenth Amendment

27  rights to the effective assistance of counsel and due process were denied by his trial

28  counsel's failure to investigate and present a mental health defense based on his history of

trauma and his diagnoses of bipolar disorder, PTSD, and intermittent explosive disorder. ECF No. 17 at 8.  Respondent answers that state court's finding that Petitioner failed to establish he was denied the effective assistance of counsel is not an objectively unreasonable application of clearly established federal law.  ECF No. 19-1 at 23–29.

This claim was presented to the state superior, appellate and supreme courts in a sequence of habeas petitions.  Lodgment Nos. 19, 21, 23, ECF Nos. 20-19, 20-21, 20-23. The superior court denied the claim, stating:

> In the present petition, Petitioner fails to state a prima facie case for relief.  The defense has the ability to present a defendant's mental condition to determine if the defendant actually had the required mental state for the crime.  In this case, the two attempted first-degree murder charges and the evading charge required Petitioner to have formed specific intent.

> In the conclusion of Dr. DeFrancesco's report, he states that Petitioner is suffering from Bipolar II Disorder, which causes patients to experience alternating phases of depression, hypomania (a more energetic, elated state), and normal functioning; PTSD, which is an anxiety-related disorder that occurs following exposure to a life threatening trauma; and Intermittent Explosive Disorder, which is when the person fails to control aggressive impulses that are not premeditated.

> Based on the evidence provided, the court finds Petitioner has not established that he suffered prejudice based on any alleged ineffective assistance of counsel.  The doctor does not set forth how the diagnosis of the three mental conditions affected Petitioner at the time of the offenses.  There is no showing that the jury would have had evidence to making [sic] the finding Petitioner did not form the specific intent to commit the charged crimes.  Petitioner has not established the relevance of the evidence and a reasonable probability the presentation of the evidence would have produced a better outcome at trial.  (*Strickland*, *supra*, at p. 694; *People v. Williams* (1988) 44 Cal.3d 883, 937.)

Lodgment No. 20, *In re Douglas*, No. EHC1402, order at 4 (Cal.Sup.Ct. Aug. 22, 2022), ECF No. 20-20.

/ / /

/ / /

The state appellate court then denied the claim, stating:

> As discussed in our opinion on direct appeal, Douglas's conviction arose from a series of incidents one night in which he stabbed a female companion, drove to a convenience store and stabbed a delivery driver he encountered, and then evaded law enforcement in a pursuit that involved him driving his car toward one officer who had to avoid being hit. A later search of Douglas's phone revealed that between the two stabbings, he recorded a video of himself in which he stated that he was going to "go on (a) killing spree."
>
> In his petition, Douglas presents evidence that shortly after his arrest, his appointed counsel, Tatiana Kline, retained a clinical psychologist to evaluate Douglas due to Kline's concerns regarding his mental health. The psychologist observed Douglas, but before he could prepare a report, Douglas retained new private counsel, Justin Murphy. Kline informed Murphy of the evaluation and provided him with Douglas's medical records. Murphy, however, did not ask the psychologist to complete the evaluation, told Douglas that his history of mental illness was "not relevant to the case," and later explained that he believed Douglas was mentally competent and "did not believe that a diminished capacity defense was appropriate." At trial, Douglas was convicted on all counts.
>
> In his writ petition, Douglas contends Murphy was ineffective due to his failure to investigate and explore a potential defense based on his mental health issues. With the assistance of his appellate counsel, Douglas obtained an evaluation and declaration from the psychologist who observed him before trial. In the evaluation, the psychologist diagnosed Douglas with bipolar disorder, posttraumatic stress disorder (PTSD), and intermittent explosive disorder. The psychologist also submitted a declaration stating that if he had been asked to testify, "I would discuss Mr. Douglas's diagnoses and history, the symptoms of Bipolar Disorder, PTSD, and Intermittent Explosive Disorder, and testify how all three disorders contributed to his violent actions . . . and resulting ability to form the specific intent to kill and/or premeditate murder." Douglas contends that if his counsel had reasonably investigated his potential defense and retained the psychologist to testify at trial, it is reasonably probable that at least one juror would have concluded that he lacked the specific intent necessary to support his convictions.
>
> Douglas does not state a prima facie case for relief. To establish ineffective assistance of counsel, Douglas must demonstrate deficient performance and prejudice under an objective standard of reasonable

probability of an adverse effect on the outcome.  (*People v. Waidla* (2000) 22 Cal.4th 690, 718.)  To establish ineffective assistance of counsel for failure to investigate potential evidence for a trial, a petitioner "must establish the nature and relevance of the evidence that counsel failed to present or discover." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)  Further, the defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel.  (Citation.)" (*Ibid*.)

As Douglas recognizes, the defense of diminished capacity has been abolished, but a defendant may still assert a defense of "diminished actuality" based on evidence that he did not form the specific intent necessary to support a conviction due to a mental health issue.  (Pen. Code, §§ 25, 28, subd. (a), 29; see also *People v. Coddington* (2000) 23 Cal.4th 529, 582.)  "Sections 28 and 29 'permit introduction of evidence of mental illness when relevant to whether a defendant actually formed a mental state that is an element of a charged offense, but do not permit an expert to offer an opinion on whether a defendant had the mental capacity to form a specific mental state or whether the defendant actually harbored such a mental state.'  (Citation.)  Under these sections, an expert may testify to establish 'defendant's mental disorders at the time of the commission of the crimes' and 'whether the defendant's conduct in committing the crimes was consistent with the expert's diagnosis of the defendant's mental condition.'  (Citation.)  Thus, for example, '(a)n expert's opinion that a form of mental illness can lead to impulsive behavior is relevant to the existence *vel non* of the mental states of premeditation and deliberation.'"  (*People v. Nieves* (2021) 11 Cal.5th 404, 440-441.)

As applied here, evidence of Douglas's alleged mental disorders would generally have been admissible at trial.  He faults his counsel, Murphy, with failing to investigate this issue, but the evidence establishes that Murphy reviewed copies of his medical records that included information regarding his diagnoses.  Although Murphy did not retain a psychologist to evaluate Douglas for purposes of trial, the evaluation submitted by Douglas offers little information beyond the relevant diagnoses that were substantially the same as those found in Douglas's existing medical records.  Although counsel could have conducted additional investigation, as Douglas suggests, Murphy was not entirely unaware of the potential issue.

Additionally, even if counsel's investigation was inadequate, Douglas fails to establish that if such evidence was introduced at trial, there is a reasonable probability of a different outcome.  In a declaration regarding his

potential testimony, the psychologist offers nothing more than a suggestion that he could have generally testified about Douglas's diagnoses and "how all three disorders contributed to his violent actions . . . and resulting ability to form the specific intent to kill and/or premeditate murder."    The psychologist's declaration does not detail any specific potential testimony to support a conclusion that Douglas did not form the requisite intent.    The psychologist's report of March 31, 2022, indicates that he was asked to give an opinion on how Douglas's mental condition likely impacted his functioning around the time of his offense, but he did not actually state any such opinion in the report.    Douglas's general assertion that the psychologist's testimony may have possibly been helpful to negate the evidence of his specific intent is not sufficient to establish prejudice.    Although he suggests other witnesses may have been able to testify about his mental condition, Douglas offers nothing more than speculation that such witnesses exist.    This is not sufficient to state a prima facie case for relief.

As noted by the trial court, Douglas fails to establish that the jury would have been provided with evidence regarding his mental disorders that would arguably be sufficient to overcome the evidence at trial establishing his specific intent.    As noted in our opinion on direct appeal, Douglas's first victim testified that before he stabbed her, Douglas walked to the trunk of his car and "said words to the effect, 'I am going to kill this bitch'" before returning to attack her.    Before he attacked his second victim, he recorded a video in which he claimed to be going on a "killing spree."    Without additional information about potential testimony sufficient to overcome this clear evidence of premeditation, Douglas fails to state a prima facie case for relief.

Lodgment No. 22, *In re Douglas*, No. D080954, op. at 1–5 (Cal.App.Ct. Nov. 9, 2022), ECF No. 20-22.

The state supreme court then denied the claim in an order which stated: "Petition for writ of habeas corpus denied."    Lodgment No. 24, ECF No. 20-24 at 1.

"When more than one state court has adjudicated a claim, we analyze the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).    However, a federal habeas court can consider more than one state court decision when "the last reasoned decision adopted or substantially incorporated the reasoning from a previous decision and, as a result, it was reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." *Id*. at 1093.    The state appellate court

found Petitioner had not established deficient performance in failing to develop and present a mental health defense because his trial counsel was "not entirely unaware" of the potential defense, and then determined that even if counsel should have further developed the defense there was no prejudice in failing to present it because, as found by the trial court, Petitioner had failed to provide evidence of a lack of ability to form the requisite intent sufficient to overcome the evidence of intent presented at trial. The appellate court identified that evidence as his statements that he was going to kill the first victim before he attacked her and that he was going on a killing spree before he attacked the second victim. The Court will apply 28 U.S.C. § 2254(d) to those findings. *Id.*

Clearly established federal law provides that to show constitutionally ineffective assistance of counsel, counsel's performance must have been deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Williams v. Taylor*, 529 U.S. 362, 391 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). Counsel's deficient performance must also have prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Prejudice requires a reasonable probability that the result of the proceeding would have been different absent the error, that is, "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Both deficient performance and prejudice must be shown, although a reviewing court need not examine both prongs if either one is not established. *Id.* at 687.

Review under *Strickland* is "highly deferential," and federal habeas review is "doubly deferential" when applying § 2254(d) to a state court adjudication of an ineffective assistance of counsel claim. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

/ / /

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The state court first found no deficient performance because counsel was aware of the potential mental health defense and Petitioner had failed to come forward with any additional evidence counsel was unaware of which could have been used in his defense. "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689. Given the doubly deferential nature of review, Petitioner has failed to show it was objectively unreasonable for the state court to find that he failed to rebut the presumption that counsel's decision was a reasonable trial strategy, arrived at through proper investigation, that a defense based on an inability to achieve the specific intent to kill the victims and evade the police was unlikely to succeed. That finding is supported by Petitioner's failure to identify evidence that defense counsel was unaware of prior to making the decision not to present a mental health defense, and by the evidence at trial establishing that he achieved the requisite intent. *See Richter*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

Even if Petitioner could show that counsel rendered deficient performance in failing to further develop and present a mental health defense, the state court also determined he had not shown prejudice because the medical evidence showing he might have had an inability to form the specific intent to attempt to murder the two victims and evade the officers was insignificant in light of the evidence at trial that he did in fact form that intent. In his own words, he announced his intent to kill the first victim just before stabbing her nearly to death, then recorded on his cell phone his intent to go on a killing spree just before he stabbed the second victim nearly to death, and then attempted to run over an officer with

his car to elude capture during the ensuing chase. Even if the jury heard the psychologist's opinion that his medical issues may have impaired his ability to form the requisite intent, it is unlikely, as the state court found, that, in light of the overwhelming evidence of his intent to kill the victims and evade the police, the jury would have found he did not form the specific intent to commit attempted first-degree murder and evade the police. Prejudice requires a showing of a reasonable probability that the result of the proceeding would have been different absent the error, that is, "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Given the double deference accorded to the state court opinion, Petitioner has failed to show it was objectively unreasonable for the state court to find there was no reasonable probability the outcome of his trial would have been different had counsel presented a mental health defense. Neither did the state court adjudication involve an objectively unreasonable determination of the facts. *Miller-El*, 537 U.S. at 340.

The Court denies federal habeas relief as to claim three because the state court adjudication of the claim is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1)–(2).

## V.   Certificate of Appealability

The Court is required to grant or deny a Certificate of Appealability when entering a final order adjudicating a 28 U.S.C. § 2254 habeas petition. *See* Rule 11, rules foll. 28 U.S.C. § 2254. "[T]he only question [in determining whether to grant a Certificate of Appealability] is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327).

Under that standard, because the state court found federal constitutional error in the instructions with respect to claim two, which is intertwined with claim one, and because claim three involves a failure to present a potentially viable trial defense, the Court finds that the issues involved in all three claims are adequate to deserve encouragement to

proceed further and that a Certificate of Appealability is therefore appropriate as to all claims presented in the First Amended Petition. *See Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc) (the standard for granting a certificate of appealability is lower than that for granting habeas relief, and a court must resolve doubts whether a certificate should issue in the petitioner's favor).

## VI.    Conclusion and Order

The First Amended Petition for a Writ of Habeas Corpus (ECF No. 17) is **DENIED** and the Court **ISSUES** a Certificate of Appealability as to all claims in the First Amended Petition.  The Clerk of Court shall enter judgment accordingly.

Dated:  December 5, 2023

Hon. Janis L. Sammartino
United States District Judge

22-CV-884-JLS (BGS)